ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ZACHARY M. GLIMCHER (CABN 308053)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7289
    FAX: (415) 436-7234
    Zachary. glimcher@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:24-cr-00221 JST |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | Date: September 20, 2024<br>Time: 9:30 a.m.<br>Court: Hon. Jon S. Tigar |
| DENILSON VELASQUEZ-SEVILLA, | |
| Defendant, | |

## I.    OVERVIEW

For the reasons set forth below, the government recommends a sentence of 41 months in custody, followed by a term of three years of supervised release. The defendant is 25 years old, entered the United States illegally for the third time, in or about 2022, and besides the instant conviction has no other criminal history in the United States.

1

GOV. SENTENCING MEMO FOR DENILSON VELASQUEZ-SEVILLA
4:24-cr-00221 JST

The investigation into the defendant began in August 2023, when an undercover law enforcement agent ("UC") approached him in the Tenderloin and purchased an ounce of fentanyl from him. The defendant provided his contact information, and over the next several months, the defendant sold fentanyl to the UC on multiple occasions in Oakland, California.

While the defendant is young, has no other criminal history in the U.S., and represents a sort of symptom of a larger problem, his participation in the current fentanyl crisis damaged our community and put lives in jeopardy.

The facts are clearly set forth in the PSR dated September 6, 2024. *See* PSR ¶¶ 6–21. In sum, the defendant sold varying quantities of fentanyl to UC law enforcement on August 17, 2023, September 6, 2023, October 18, 2023, December 12, 2023, and January 30, 2024. On March 13, 2024, he met with the UC and was arrested while possessing fentanyl, so the combined total for all of the transactions and intended transactions was 668 grams of fentanyl. *See id*.

The defendant came to the U.S. seeking better financial opportunities. *See* PSR ¶ 52. To that end, he engaged in criminal activity that undermines and leads to the dysfunction of the very society he found appealing enough to seek out. His conduct and conviction are contemplated by and likely trigger § 212(a)(2)(C)(i) of the Immigration and Nationality Act, related to controlled substance trafficking, so he will likely be rendered inadmissible without the possibility of a waiver of inadmissibility. That is a decision for another court. Here, while it is unknown to how many people and on how many occasions the defendant sold fentanyl, he did so with the UC on five separate occasions. For that, he deserves a custodial sentence, in addition to any immigration consequences.

For these reasons as well as those set forth in more detail below, we recommend a sentence of 41 months in custody.

## II.     PROCEDURAL HISTORY

On March 11, 2024, the government charged the defendant by Criminal Complaint with one count of possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). *See* Dkt. 1. On April 17, 2024, the government filed an Information charging him with one count of

possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and on April 22, 2024, the defendant waived his right to indictment. *See* Dkts. 16, 19.

On June 14, 2024, the defendant and the parties appeared before United States District Judge Jon S. Tigar, at which the parties signed a plea agreement, and the defendant pled guilty to the Information. *See* Dkts. 22 and 23. The parties stipulated and the Court set September 20, 2024, for judgment and sentencing.

### III.     SENTENCING GUIDELINES

#### A.     Offense Conduct

The government agrees with the facts that are set forth in PSR dated September 6, 2024. *See* PSR ¶¶ 6-21. In sum, the defendant sold fentanyl to UC law enforcement on five separate occasions, and on the 6th encounter that resulted in his arrest, the defendant possessed fentanyl with the intent to distribute. *See* PSR ¶ 20. In total, the defendant distributed and possessed with intent to distribute 668 grams of fentanyl.

#### B.     Sentencing Guidelines Calculations

The parties agree that Mr. Velasquez-Sevilla should be held accountable for possessing for sale more than 400 grams but less than 1.2 kilograms of converted drug weight. *See* PSR at ¶ 30. The parties also agree that Mr. Velasquez-Sevilla's criminal history category is 0. *See* PSR at ¶ 38.

The parties therefore agree that the applicable Guidelines range should be calculated as follows:

a.  Base Offense Level, U.S.S.G. § 2D1.1(a)(5), (c)(5):                                      30
    Defendant possessed > 400g but < 1.2kg of Converted Drug Weight

b.  Acceptance of Responsibility, U.S.S.G. § 3E1.1:                                          -3

c.  Zero-Point Offender Adjustment                                                           -2

d.  Adjusted Offense Level:                                                                  25

The Presentence Report and the findings in it, including as to the Sentencing Guidelines and Sentencing range is accurate. *See* PSR ¶ 39. Based on a criminal history category 0 and the government

agreeing to a -3 variance, the government requests to modify the sentence downward from the calculated range of 57-71 months to 41-51 months.

## IV.     SENTENCING RECOMMENDATION

The United States recommends a sentence of 41 months in custody, three years of supervised release, and forfeiture of the defendant's three cell phones seized during his arrest on March 13, 2024.

As mentioned above, the defendant left Honduras and came to the United States in search of better financial opportunities. While he may have come here with reasonable intentions, he hurt our community and deserves to be convicted, imprisoned, administratively removed and subject to present and future inadmissibility under the Immigration and Nationality Act.

Importantly, the fact that this defendant was federally prosecuted is significant in and of itself. It is making a difference in the Bay Area. The United States Attorney's Office is committed to prosecuting street level drug dealers because of the overwhelming harm being caused to the people who live in the Bay Area. For Americans aged 18-45, the leading cause of death is fentanyl overdose. The addictive drug is responsible for nearly 70% of the United States' 107,000+ drug overdose deaths in the past year and is 50 times stronger than heroin and 100 times stronger than morphine.[1]

**A.     Section 3553 Factors**

**1.     Nature and Circumstances of Offense; History and Characteristics of Defendant**

The defendant is a 25-year-old Honduran national. According to the Department of Homeland Security, the defendant lacks immigration status and/or is inadmissible under U.S. immigration law. There is an immigration detainer in place such that the parties expect the defendant will be transferred to the custody of the Department of Homeland Security for removal proceedings following his release from the custody of the U.S. Marshals Service. By the time he is sentenced, the defendant will have served over six months custody time. If the Court adopts the government's recommended sentence of 41

---

[1] https://www.getsmartaboutdrugs.gov/media/dea-administrator-record-fentanyl-overdose-deaths

months, the defendant will be released directly from the Marshal into ICE custody, and he will almost certainly be deported thereafter.

The defendant waived detention and has been in continuous custody since his arrest. He also waived indictment and agreed promptly to plead guilty. The defendant is young and lacks other criminal history in the United States. The acceptance of responsibility and Zero-Point-Offender adjustment, as well as the government's agreement to a -3 variance to the total offense level acknowledge those mitigating factors.

**2. Need for Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment; to Afford Adequate Deterrence to Criminal Conduct; and to Protect the Public from Further Crimes of the Defendant**

The defendant's distribution of fentanyl contributed to a crisis of public health and public safety. Its continuation will kill people and further damage and degrade the communities in the Bay Area enduring it. Although the defendant faces likely removal from the United States, the seriousness of the crime needs to be emphasized by attaching a custodial sentence as punishment. Prison time will also have a deterrent effect.

The defendant is also on notice that a return to any part of the United States, assuming he is deported, will invite new charges and/or supervised release violations and an 8 U.S.C. § 1326 charge that will be more serious because of his aggravated felony drug conviction in this case. See e.g., 8 U.S.C.§1326 (a) and (b)(2) (that increases the sentence for prior re-entries where there is an intervening aggravated felony conviction as there will now be in this case). Any subsequent illegal reentry into this case will be punishable with more prison time in addition to the Supervised Release violation enforceable over the next 3 years.

//
//
//
//
//

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence the defendant to 41 months in custody, to be followed by a term of supervised release of three years. We submit that this sentence is sufficient but not greater than necessary to accomplish all of the § 3553(a) factors in this case.

DATED: September 13, 2024,                    Respectfully Submitted,

ISMAIL J. RAMSEY
United States Attorney

 /s/  *Zachary Glimcher*
ZACHARY M. GLIMCHER
Special Assistant United States Attorney